745 F.2d 307
 11 Collier Bankr.Cas.2d 648, Bankr. L. Rep. P 70,061
In re HARTMAN PAVING, INC., South Berkeley Lumber & Supply,
Inc., Debtors-In-Possession.
Thomas G. PYNE, Appellant,
v.
HARTMAN PAVING, INC., Appellee.
 No. 83-1443.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1983.
Decided Oct. 2, 1984.
 
 John C. Skinner, Jr., Charles Town, W. Va. (Nichols and Skinner, L.C., Charles Town, W. Va., on brief), for appellant.
 Michael L. Bray, Clarksburg, W. Va. (Steptoe & Johnson, Clarksburg, W. Va., on brief), for appellee.
 Before WINTER, Chief Judge, and PHILLIPS and ERVIN, Circuit Judges.
 ERVIN, Circuit Judge:
 
 
 1
 Thomas G. Pyne appeals from the district court's order affirming the bankruptcy court's denial of relief from the automatic stay imposed under 11 U.S.C. Sec. 362. We reverse.
 
 I.
 
 2
 In August of 1979 Pyne conveyed real estate and several mobile homes by deed to the Hartman Paving Corporation [Hartman] in exchange for a promissory note. The deed was recorded in the office of the Clerk of the County Commission of Berkeley County, West Virginia. The promissory note required Hartman to pay Pyne the principal sum of $88,000.00 at the rate of 10% interest in 240 monthly installments. To secure payment for the note, Hartman executed and delivered a deed of trust conveying the real estate and mobile homes to Michael B. Keller, an appointed trustee. The deed was signed by Thomas Hartman, President of Hartman Paving Corporation, and notarized by Keller who was then a Notary Public for Berkeley County, West Virginia.
 
 
 3
 On August 19, 1981, Hartman filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Northern District of West Virginia. In November of the same year Pyne filed a proof of claim with the bankruptcy court. Pyne alleged that he was the holder of a claim secured by a deed of trust lien on real estate. According to Pyne, between November 1981 and March of the following year Hartman refused to make monthly payments on the note and continued to remove shale from the secured property. Accordingly, in March of 1982 Pyne filed a complaint in bankruptcy court seeking (1) an Order of Abandonment releasing the land; (2) an order lifting the automatic stay; and (3) an order enjoining Hartman from using the real estate as a shale pit.
 
 
 4
 Hartman responded by arguing that the deed of trust was void as a matter of law because Keller had acted as both trustee and notary public. If the deed of trust were void, as Hartman contended, Pyne would be an unsecured creditor of Hartman Paving, Inc. and would not be entitled to the relief sought.
 
 
 5
 After Hartman filed its answer, Pyne moved the court to certify to the Supreme Court of Appeals of West Virginia the question "Under West Virginia law, is the acknowledgement of a Trust Deed by the Grantor before the Trustee, with the Trustee acting as a Notary, void?" On April 23, 1982, the Bankruptcy Court held the deed of trust void and therefore concluded that Pyne's claim was unsecured. The court denied Pyne's request to lift the automatic stay, and denied the motion to certify the question.[1] Pyne then appealed to the District Court for the Northern District of West Virginia.
 
 
 6
 While this appeal was pending, Pyne filed a second complaint in the bankruptcy court seeking a modification of the automatic stay to allow the filing of a declaratory judgment action in the Circuit Court of Berkeley County, West Virginia. The stated purpose of the declaratory judgment action was to determine the legal effect under West Virginia law of a trustee serving as notary. The bankruptcy court dismissed the complaint on the ground that it lacked jurisdiction while the first complaint was on appeal.
 
 
 7
 Pyne then filed a motion in the district court to remand the initial complaint to the bankruptcy court. The district court denied the motion and affirmed the initial decision of the bankruptcy court.
 
 II.
 
 8
 It is well established under West Virginia law that a deed of trust acknowledged by the grantor before a trustee, acting as a notary, is valid as between the parties to the instrument "or those purchasing with actual notice," but invalid as against all judgments and all subsequent bona fide purchasers for value. Tavenner v. Barrett, 21 W.Va. 656 (1883); Central Trust Co. v. Cook, 111 W.Va. 637, 163 S.E. 60 (1932).[2] Before Hartman filed for bankruptcy, therefore, the deed was valid between Hartman and Pyne because both were parties to the instrument and had actual notice of the execution and conveyance of the deed.
 
 
 9
 Under Sec. 1107(a) of the Bankruptcy Reform Act, however, a debtor becomes a "debtor-in-possession" upon filing for bankruptcy and thereby gains "all the rights and powers of a trustee serving in a case under said chapter."[3] 11 U.S.C. Sec. 1107(a). Section 544(a) of the Bankruptcy Act provides, in turn, that the trustee "shall have ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor" that is voidable by a judicial lien creditor, an execution lien creditor, or a subsequent bona fide purchaser for value.[4] 11 U.S.C. Sec. 544(a). Under Sec. 544(b), the applicable rights and powers of the trustee are those provided by local state law. See Martin v. Crocker-Citizens National Bank, 349 F.2d 580 (9th Cir.1965).
 
 
 10
 When Hartman filed for bankruptcy, therefore, he became a debtor-in-possession under Sec. 1107(a) and was entitled to avoid any obligations that would have been voidable by a subsequent bona fide purchaser for value or lien creditor under West Virginia law. Tavenner --the controlling West Virginia precedent--states in part that a deed acknowledged by a trustee acting as a notary will not be valid against subsequent bona fide purchasers for value. Thus Hartman argued below, and now contends on appeal, that as debtor-in-possession he was entitled under Sec. 544(a) to avoid the deed of trust and treat Pyne as an unsecured creditor.
 
 
 11
 We are not persuaded by Hartman's argument because it ignores a critical part of the Tavenner holding. Tavenner stands for the proposition that an improperly acknowledged deed is only void against subsequent bona fide purchasers for value who take without actual notice:
 
 
 12
 [A] conveyance though improperly acknowledged is good between the parties or those purchasing with actual notice. The court thus reasons:
 
 
 13
 "The objection to the trustee taking such acknowledgement is analogous to the one forbidding a judge to pass upon his own case. Though this act may not be strictly judicial, it is of a judicial nature and requires disinterested fidelity. We know that in practice such a trustee is always selected by the beneficiary; he is controlled by the beneficiary in fixing the time of sale, and its proceeds come into his hands. There is such an interest, that as to the requisite of the deed itself, it should be placed upon a level with other parties, and be incapacitated from holding any official relation to its execution. The want of a proper acknowledgement does not however invalidate the deed (of one sui juris) but only goes to the effect of the record. If not acknowledged or proved, its record is not provided for by law, and the fact that it may be copied upon the book of records will not operate as constructive notice to subsequent purchaser. Dussaume v. Burnett, 5 Iowa 95; Lessee of Shultz v. Moore, 1 McLean 520; Barney v. Sutton, 2 Watts 31; Hastings v. Vaughan, 5 Cal. 315; Price v. McDonald, 2 Md. 403; Johns v. Scott, 5 Md. 81. The deed however is good between the parties, (being sui juris) and should prevail against subsequent deeds to those who had actual notice of its existence. Dussaume v. Burnett, 5 Iowa 95; Caldwell v. Head, 17 Mo. 561; Cooley v. Rankin, 11 Mo. 647."
 
 
 14
 Tavenner at 688 (emphasis added). This rule makes considerable practical sense, for one who purchases with actual notice, even if a subsequent purchaser, is not subject to the same dangers of fraud as a subsequent purchaser who is dependent solely on record notice. To treat both the same simply because each is a subsequent purchaser would elevate form over substance.[5]
 
 
 15
 Hartman was a party to the transaction and consequently had actual notice of the conveyance. Thus although Hartman is entitled to claim the powers of a subsequent purchaser for value under Sec. 544(a), those powers, as properly defined under local law, do not permit him to void the deed because--simply stated--Hartman is not the type of subsequent purchaser that Tavenner was designed to protect.
 
 III.
 
 16
 For the foregoing reasons, Pyne's claims for relief are granted.
 
 
 17
 REVERSED.
 
 HARRISON L. WINTER, Chief Judge, dissenting:
 
 18
 I agree with the majority that under West Virginia law a deed acknowledged by a trustee acting as a notary will not be valid against subsequent bona fide purchasers for value who take without actual notice of its existence. See Tavenner v. Barrett, 21 W.Va. 656 (1883).* In applying that rule to the facts of this case, the majority holds that the knowledge of Hartman Paving, Inc. (Hartman) which executed the defective deed of trust is chargeable or imputed to Hartman as the debtor-in-possession under the subsequent Chapter 11 bankruptcy proceeding. It is with this holding that I disagree. I think that the knowledge of Hartman, as grantor, is not chargeable or imputed to Hartman, as debtor-in-possession, and therefore Hartman, as debtor-in-possession, had the right--indeed the duty--to disclaim the deed unless it is shown that all of Hartman's creditors had actual notice of the deed. There is no such showing on this record. Thus I respectfully dissent.
 
 I.
 
 19
 When Hartman, having actual knowledge of the defective deed, became a debtor-in-possession, it became vested with the powers and the duties of a trustee in a bankruptcy case under Chapter 11, except the right to compensation as a trustee. 11 U.S.C. Sec. 1107(a). Thus, Hartman became vested with the rights set forth in 11 U.S.C. Sec. 544(a), the pertinent portions of which follow:
 
 
 20
 Sec. 544. Trustee as lien creditor and as successor to certain creditors and purchasers
 
 
 21
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
 
 
 22
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;
 
 
 23
 * * *
 
 
 24
 (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.
 
 
 25
 By the statute, upon becoming a debtor-in-possession, Hartman acquired the statuses of an ideal bona fide purchaser and an ideal judicial lien creditor, 11 U.S.C. Sec. 544(a)(1) and (3), and to all the rights that such ideal creditors have under state substantive law. The bankruptcy trustee attains such idealized status whether or not he or any actual creditor had actual knowledge of pre-existing obligations of the debtor. The same is true of a debtor-in-possession; he assumes the same idealized status as the bankruptcy trustee without regard to any knowledge he or any creditor on whose behalf he acts may have. 11 U.S.C. Sec. 544(a).
 
 
 26
 I therefore conclude that Hartman's knowledge, as debtor, is not imputed to it as debtor-in-possession. Moreover, as debtor-in-possession, it had a duty to "examine proofs of claims and object to the allowance of any claim that is improper," 11 U.S.C. Sec. 704(4), and therefore it had a duty to avoid Pyne's claim as a secured creditor. Only if it could be shown that each of Hartman's creditors had actual knowledge of the existence of the deed of trust do I see any ground on which to apply the exception to the Tavenner rule, and there is no such showing here.
 
 
 27
 The argument of Pyne, the purportedly secured creditor, that Hartman should not be able to do in bankruptcy as debtor-in-possession what Hartman could not do outside bankruptcy as debtor misses the point. Hartman as debtor-in-possession does not avoid Pyne's lien as debtor; Hartman avoids it only in its role as trustee for all claimants against the debtor. Pyne's claim remains good against Hartman, it is only in demoting it from a secured to an unsecured claim that the defective acknowledgement of the trust deed does him harm.
 
 
 28
 I would affirm the judgment of the district court.
 
 
 
 [1]
 Because the court found that Pyne was an unsecured creditor and could not reach the land, it also denied Pyne's motion for injunctive relief
 
 
 [2]
 Pyne's request to certify this issue to the West Virginia Supreme Court of Appeals was properly denied. Under the Uniform Certification of Questions of Law Act, which West Virginia has adopted, the certifying court must conclude that there is no controlling precedent before ordering certification. W.Va.Code Sec. 51-1A-1. Tavenner and Central Trust are directly on point
 
 
 [3]
 Section 1107(a) states in pertinent part that:
 (a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, shall perform all the functions and duties, except the duties specified in sections 1106(a)(2)(3) and (4) of this title, of a trustee serving in a case under this chapter.
 
 
 [4]
 Section 544(a) states in pertinent part that:
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
 * * *
 (3) a bona fide purchaser of real property from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.
 
 
 [5]
 The district court stated in its opinion that under Tavenner "a deed of trust acknowledged by the grantor before a trustee, acting as a notary, is valid as between the parties to the instrument and all who have actual notice, but invalid as against all judgments and all bona fide purchasers for value." (J.A. at 30)
 For the reasons discussed above, we believe this reading of Tavenner is incorrect. We note in addition, however, that once the district court concluded that a valid deed requires a party be both a party to the instrument and have actual notice, it followed necessarily that an improperly acknowledged deed must be invalid against all subsequent purchasers. This reasoning produces a result here that is incongruous with the rationale of Tavenner. Tavenner was concerned primarily with protecting against danger of fraud. Because Hartman had actual notice, he cannot now claim that the improper acknowledgement caused him injury. To read West Virginia law as the district court did, therefore, permits Hartman to turn a legal "fiction" found in Sec. 544(a) to unfair personal gain. In short, the lower court's interpretation of Tavenner turns West Virginia law on its head.
 
 
 *
 Tavenner explains that while such a deed may be recorded, such recordation does not constitute constructive notice of its existence because such a deed is not entitled to be recorded. Tavenner at 688